**General William C. WESTMORELAND, Ambassador Richard Helms, Appellant,**

v.

**CBS, INC., et al.**

**No. 84–5366.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 14, 1985.
Decided Aug. 20, 1985.

---

John G. Kester, Washington, D.C., for appellant Ambassador Richard Helms.

David Boies, New York City, with whom Stuart W. Gold and William F. Duker, New York City, were on brief, for appellees CBS, Inc., et al.

Before MIKVA and STARR, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

During the course of discovery arising out of a libel suit brought by retired United States Army General William C. Westmoreland against the Columbia Broadcasting System ("CBS"), appellee CBS obtained a subpoena *duces tecum ad testificandum* to depose a non-party witness, appellant Richard Helms. The witness appeared but refused to permit appellee to videotape the deposition absent a court order for a videotaping. Instead of moving under Federal Rule of Civil Procedure 30(b)(4) to have the deposition videotaped, appellee petitioned the district court for an order to show cause why the witness should not be held in civil contempt of court. The district court denied the petition, treated it as a motion under Rule 30(b)(4) to have the deposition videotaped by non-stenographic means, and in turn denied that motion.[1] *Westmoreland v. CBS, Inc.,* 584 F.Supp. 1206 (D.D.C.1984). The district court also denied appellee's motion for costs and Helms' motion for costs and attorneys' fees incurred in attending the deposition, and Helms' motion for costs and attorneys' fees in defending the petition. *Id.* at 1211 n. 6. The issue raised in this appeal is whether the district court erred in denying an award of costs and attorneys' fees to the non-party witness for appearing at the subpoenaed deposition and for defending against appellee's petition for a contempt order. As to the petition for contempt, we conclude that the district court erred in not imposing sanctions, and reverse.

## I. Background

The present controversy arose in connection with a libel action brought by retired general William C. Westmoreland against CBS.[2] Appellant Richard Helms served as

---

1. In this opinion "petition" refers specifically to CBS' request for the contempt sanction; "motion" refers to the controversy over the videotape.

2. The suit, filed in the U.S. District Court for the Southern District of New York, involved General Westmoreland's $120 million libel claim against CBS for its broadcast entitled "The Uncounted Enemy: A Vietnam Deception." *Westmoreland v. Columbia Broadcasting System,* No. 82 Civ. 7913 (S.D.N.Y., filed Nov. 30, 1982). The

merits of the main litigation are not relevant to this appeal. The present dispute arose during pretrial discovery proceedings; the libel suit was later settled following partial trial but before submission to the jury. This settlement subsequently mooted CBS' appeal of the denial of its request to videotape Helms' deposition. *See Helms v. CBS, Inc.,* 764 F.2d 927 (D.C.Cir. 1985) (Order). The present claim, however, may be entertained even though the underlying case has become moot. *See Williams v. Alioto,*

Director of the Central Intelligence Agency from 1966 to 1973 and was not a party to the underlying libel suit. On February 3, 1984, appellee served Helms with a subpoena *duces tecum ad testificandum* directing him to appear for a deposition at appellee's Washington, D.C. offices on February 22, 1984 regarding the Westmoreland libel suit (Joint Appendix (J.A.) 37). The subpoena was silent as to the means of recording the deposition. On February 15, 1984, Helms' counsel, in reviewing a prior deposition in the *Westmoreland* litigation, noticed that it had been videotaped. He subsequently learned from Kathleen McGinn, counsel for Westmoreland, that several witnesses in the case had permitted appellee to videotape their depositions. Affidavit of John G. Kester at 3 (J.A. 83). On February 21, 1984, after researching the issue, Helms' counsel had a messenger deliver to appellee's counsel copies of all subpoenaed documents plus a letter stating that Helms would "not consent to [the] videotaping of [his] deposition," if contemplated by appellee (J.A. 42, 82).

On February 22, 1984, Helms and counsel appeared at appellee's offices at the appointed time for the deposition. Upon Helms' arrival, appellee announced for the first time that it intended to videotape the deposition. Helms' counsel restated his client's refusal to consent to be videotaped. Affidavit of Kester at 3 (J.A. 35). Though appellee's counsel stated he thought he had an informal understanding with Westmoreland's counsel agreeing to the videotaping of depositions, appellee's counsel "acknowledged that there was no order of the court and no stipulation in writing" authorizing videotaping. *Id.* Helms' counsel again pointed out that Helms was present and willing to proceed with the deposition before a stenographer. *Id.* Appellee's counsel, however, stated he did not wish to open the record and would seek a court order authorizing videotaping. *Id.*

625 F.2d 845, 848 (9th Cir.1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213

On February 24, appellee informed Helms' counsel that instead of requesting a videotaping order, it would petition the court to hold Helms in contempt of court (J.A. 35), which it did. Appellee proceeded on the theory that the subpoena was a court order compelling Helms "to testify" (J.A. 15) and that Helms' refusal to be videotaped violated that order. The district court rejected such reasoning. The court noted that appellee had never moved for a Rule 30(b)(4) order, and thus "[t]here is no question that [Helms] is not in contempt of an order of the Court" (J.A. 102) (comments from the bench). The district court further found that "Helms does not object to being deposed; indeed, he has been most cooperative in scheduling his deposition and in producing the documents he was asked for." 584 F.Supp. at 1213. In the interest of judicial economy, the court treated appellee's motion as a request for a Rule 30(b)(4) order, and denied it.

In connection with the aborted deposition, both parties moved the court for costs, and Helms' moved additionally for attorneys' fees. Helms also moved for costs and attorneys' fees in connection with defending appellee's contempt petition. In a footnote, the court denied all motions:

Both CBS and Helms pray for an award of costs incurred with respect to the deposition and the petition, and Helms asks for an award of attorneys' fees under Rule 37, Rule 11, and 28 U.S.C. § 1927. Since both parties were aware in advance of the other's intransigence in the matter, yet went ahead to confrontation without first applying to the Court, and the attorneys' fees and costs would have been incurred had either proceeded by way of a prior application—CBS for a Rule 30(b)(4) order for videotaping (as the petition for a rule to show cause is hereafter treated), or Helms for a Rule 26(c) protective order—giving no cause for sanctions, the prayers for awards of fees and costs are denied.

(1981).

584 F.Supp. at 1211 n. 6. Helms moved for partial reconsideration. In response, the district court noted that "proceedings in connection with the proposed videotaping of [Helms'] deposition were inevitable and substantially justified." *Westmoreland v. CBS, Inc.*, Nos. 82–0298, 83–0313, 84–0067 (D.D.C. May 15, 1984) (Order) (J.A. 13). On appeal Helms challenges the district court's denial of costs and attorneys' fees incurred in attending the deposition and defending appellee's petition to show cause why Helms should not be held in contempt of court. Helms makes no claim for, nor do we decide, his right to attorneys' fees and costs incurred in resisting the resulting Rule 30(b)(4) videotape motion.

## II. DISCUSSION

### A. Jurisdiction

■ We first determine our appellate jurisdiction. Orders relating to discovery matters are generally characterized as interlocutory and thus nonappealable because they are not final orders under 28 U.S.C. § 1291. Review must usually wait until a final judgment is entered in the underlying action. We find, however, that in this case the district court's denial of costs and attorneys' fees fits within the collateral order exception to the finality rule as articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The rationale and application of the collateral order doctrine are well explained in *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 369–71 (9th Cir.), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982), and need not be reiterated here. According to *Cohen*, "the

order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). This case meets the requirements of *Cohen*. First, the district court's denial of attorneys' fees was conclusive on that issue; it was not "tentative, informal or incomplete." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225. Second, Helms' right to attorneys' fees incurred in the defense of appellee's show cause petition is an issue separate from and collateral to the merits of the *Westmoreland* lawsuit. Third, given that Helms was a non-party in the underlying litigation which was ongoing in a district court in another circuit, there is no way Helms could otherwise have obtained review of his denial of costs and attorneys' fees. *See National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 597 & n. 2 (3d Cir.1980) (cases cited). Thus, we find that the present case fits within the *Cohen* collateral order exception to the finality rule, and accordingly is presently reviewable by this court.

### B. Sanctions

■ Ambassador Helms moved the district court for an award of attorneys' fees pursuant to Federal Rules of Civil Procedure 11 and 37, and 28 U.S.C. § 1927. Helms contends that "if CBS had followed the procedure prescribed by the Federal Rules ... to compel [testimony] under Rule 37(a), ... Helms would be entitled to reimbursement of his costs and attorneys' fees" under Rule 37(a)(4)[3] for successfully defending against appellee's motion. Brief of

---

**3.** Rule 37(a)(4) provides in part:

 If the motion [for an order compelling discovery] is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

The district court initially treated appellee's papers as a petition for contempt, and not as a motion to compel under Rule 37(a). 584 F.Supp. at 1211. Even had we proceeded under Rule 37(a)(4) as Helms suggests, however, we would be compelled to reach the same conclusion we reach under Rule 11. *See* pages 1176–1177 *infra*. In no way can we say the petition was justified, much less substantially justified, and it would be an abuse of discretion to have held to the contrary.

Appellant at 14. Rule 37(a)(2) provides: "If a deponent fails to answer a question propounded ... under Rule [ ] 30 ... the discovering party may move for an order compelling an answer...." However, appellee did not resort to the process of Rule 37(a), and we decline to apply the remedy provisions of Rule 37(a)(4) based on what appellee did *not* do. "Rule 37(a)(4) is not a general attorneys' fee awards for violations of the Federal Rules of Civil Procedure. It provides a reimbursement of expenses incurred specifically in compelling discovery under Rule 37(a)." *Broder v. Perpetual American Bank*, 107 F.R.D. 213 (E.D.Pa.1985) (held: no recovery under Rule 37(a)(4) where no motion made under Rule 37(a)). Moreover, even though appellee sought contempt sanctions under Rule 37(b)(2)(D),[4] because appellee never moved to compel there is no violation of Rule 37(b)(1).[5] Thus, Rule 37(b)(2)(D) does not come into play. Rule 37(b)(2) is inapplicable further because it applies only to *parties*, not to witnesses such as appellant. Cognizant of the Supreme Court's decision in *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), that dismissal sanctions for noncompliance with production orders fall exclusively under Rule 37, and the logical implication that Rule 37 accordingly covers other sanctions relating to compliance with production orders, we can find nothing in either Rule 37(a) or 37(b)(2) that provides relief for the situation here of defending against a petition seeking to hold an allegedly recalcitrant witness in contempt of court. Section 1927,[6] though applicable, applies only to *attorney* misconduct. Thus, because we find that the contempt petition was so groundless, we conclude

that Rule 11, which applies to discovery motions and reaches both attorney and client participation, is best suited to cover the abuse alleged here.

### 1. *Standard of Review*

Rule 11 of the Federal Rules of Civil Procedure provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... *If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added.) The purpose of the rule is to require "[g]reater attention by the

---

**4.** Rule 37(b)(2)(D) provides that where a party "fails to obey an order to provide or permit discovery," the court may make such orders as are just, including "an order treating as a contempt of court the failure to obey any orders."

**5.** Rule 37(b)(1) provides:

> If a deponent fails to be sworn or to answer a question *after being directed to do so by the court* in the district in which the deposition is being taken, the failure may be considered a contempt of that court.

(Emphasis added.)

**6.** Title 28 U.S.C. 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

district courts to pleading and motion abuses and ... [to] impos[e] ... sanctions when appropriate, ... discourage ... abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11 advisory committee note. The rule, as amended, is also "intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney." *Id.*[7] Rule 11 clearly encompasses discovery motions and "other papers," though discovery generally is covered by Rules 26 through 37. *Id.;* Fed.R.Civ.P. 26 advisory committee note.

▮ Traditionally, the district court is accorded wide latitude in regulating and ruling on discovery matters, and appellate courts will reverse only for an abuse of discretion. *Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 991 (D.C.Cir.1979) (cases cited). The inquiry generally is whether the district court acted arbitrarily or fancifully in denying the movant's request. *Id.* & n. 36. Under amended Federal Rule of Civil Procedure 11, however, the new provision that the court "shall impose" sanctions mandates the imposition of sanctions when warranted by groundless or abusive practices.[8] The rule's provision that the court "shall impose" sanctions for motions abuses thus concentrates the district court's discretion on the *selection* of an appropriate sanction rather than on the *decision* to impose sanc-

tions, *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 11.02[2], at 11–18 (2d ed. 1985), and is intended to underscore the need for curbing litigation abuse, *see* Amendments to Rules, 97 F.R.D. 165, 191–92 (1983) (Excerpt from the Report of the Judicial Conference Committee on Rules of Practice and Procedure) (Walter E. Mansfield, Chairman, Advisory Committee on Civil Rules) ("Mandating sanctions ... upon the violator is viewed as a healthy deterrent against costly meritless maneuvers...."); *The Pound Conference Follow-Up Task Force,* 74 F.R.D. 159, 191–94 (1976).

Under Rule 11, sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay. In determining whether factual (1) or dilatory or bad faith (3) reasons exist which may give rise to invocation of Rule 11 sanctions, the district court is accorded wide discretion. For the district court has tasted the flavor of the litigation and is in the best position to make these kinds of determinations. However, once the court finds that these factors exist, Rule 11 *re-*

---

**7.** Amended Rule 11 has already been invoked by district courts in numerous contexts. *E.g., AM Int'l, Inc. v. Eastman Kodak Co.,* 39 Fed.R. Serv.2d (Callaghan) 433 (N.D.Ill.1984) (implication in footnote of brief that plaintiff's counsel misled defendants); *SFM Corp. v. Sundstrand Corp.,* 102 F.R.D. 555 (N.D.Ill.1984) (ill founded summary judgment motion); *Van Berkel v. Fox Farm & Road Machinery,* 581 F.Supp. 1248 (D.Minn.1984) (counsel's failure to dismiss time barred suit); *Weisman v. Rivlin,* 598 F.Supp. 724 (D.D.C.1984) (counsel's failure to reasonably inquire into factual basis of diversity jurisdiction for lawsuit); *Barton v. Williams,* 38 Fed. R.Serv.2d (Callaghan) 966 (N.D.Ohio 1983) (deliberately filed complaint in wrong district).

**8.** The pre-1983 amendment Rule 11 was permissive in nature:

The signature of an attorney constitutes a certificate by him that he has read the plead-

ing; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.

Rule 11's new directive to impose sanctions can be contrasted with Rule 37's more permissive approach. *See* Fed.R.Civ.P. 37(a)(4) (court "shall" award expenses and attorneys' fees "unless ... the motion was substantially justified or ... other circumstances make an award of expenses unjust"); Rule 37(b)(2) (same); Rule 37(d) (same); Rule 37(c) (court shall make award "unless ... there was other good reason for the failure to admit").

*quires* that sanctions of some sort be imposed. A refusal to invoke Rule 11 constitutes error. On the other hand, a decision whether the pleading or motion is *legally* sufficient (2) involves a question of law and receives this court's *de novo* review. The selection of the type of sanction to be imposed lies of course within the district court's sound exercise of discretion. Thus, we interpret Rule 11 not to have removed from the district court the discretion it needs to efficiently carry out its duties and manage its caseload, but rather to require that sanctions be imposed once the district court's exercise of discretion finds sanctionable circumstances.

With this view of Rule 11 in mind, we turn to the case before us to determine whether Rule 11 sanctions should have been imposed. In reviewing the district court's decision, "we 'must [also] consider whether the [district court's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371 (9th Cir.), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982). For the reasons set forth below, we conclude that the district court's denial of sanctions was not properly grounded upon the relevant factors and that sanctions should have been imposed against appellee and/or its counsel under Federal Rule of Civil Procedure Rule 11.

### 2. *The Merits*

The determination of whether appellee acted reasonably under the law in bringing its petition to show cause why Helms should not be held in contempt of court requires us to review the procedure for videotaping depositions as set forth in Federal Rule of Civil Procedure 30(b)(4).

To compel a witness to attend a deposition under Rule 30(a), a party must obtain a subpoena under Rule 45(d). If the deponent attends the deposition in accordance with the subpoena and agrees to proceed, he or she has fulfilled the requirements of the subpoena. However, if the deponent fails to obey the subpoena, he or she may

be deemed in contempt of court. Fed.R. Civ.P. 45(f). If the deponent appears but refuses to be sworn or answer a question, the party taking the deposition may move the court under Rule 37(a)(2) to compel the deponent to do so, after which a failure may be considered a contempt of court. Fed.R.Civ.P. 37(b)(1). *See generally* Rodes, Ripple & Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 7–8, Federal Judicial Center (1981). Unless a court order otherwise provides, at a subpoenaed deposition "the testimony shall be taken *stenographically.*" Fed.R.Civ.P. 30(c) (emphasis added).

Rule 30(b)(4) provides for situations where a deposition is sought to be recorded *by other than stenographic means:*

> The parties may stipulate *in writing* or the court may *upon motion order* that the testimony at a deposition be recorded by other than stenographic means. . . .

(Emphasis added.) The rule clearly contemplates only two methods for non-stenographic recording of a deposition: the parties must either stipulate *in writing* to some other method, *i.e.,* electronic recording, videotaping, etc., or the party seeking discovery must *move the court* to order some other method. Thus, absent a written stipulation, a Rule 45(d) subpoena which is silent as to how the deposition will be recorded entitles the party seeking discovery only to a stenographically-recorded deposition. *See* Fed.R.Civ.P. 30(c). *The rule is clear.*

In the present case, appellee obtained a subpoena from the district court which commanded appellant to appear at a time certain and made no mention of a nonstenographic recording. Thus, when Helms appeared in accordance with the subpoena and agreed to a stenographically-recorded proceeding, he fulfilled his obligation under the subpoena, as recognized by the district court. 584 F.Supp. at 1211 (citing *SEC v. Research Automation Corp.,* 521 F.2d 585 (2d Cir.1975)). If appellee wanted a video-recorded deposition it was required at this juncture to move the court pursuant to

Rule 30(b)(4) for an order to that effect. Indeed, this was the course appellant's counsel advised appellee's counsel to take (Letter of appellant's counsel to appellee's counsel (J.A. 43)), and which appellee acknowledged it would take (J.A. 35). *See also* 584 F.Supp. at 1211 n. 7.

Appellee did return to the district court but styled its request as a "Petition By CBS, Inc., et al. For An Order To Show Cause Why Richard Helms Should Not Be Found In Civil Contempt" (J.A. 14). The petition argued that "nothing in Rule 30(b)(4) ... requires a stipulation of the parties or an order from the Court for the recording of a deposition by other than stenographic means," claiming support from *Colonial Times, Inc. v. Gasch,* 509 F.2d 517, 521 (D.C.Cir.1975) (J.A. 20). The petition further argued that the *parties* had been acting pursuant to an informal agreement allowing each other to videotape depositions, and noted that, "[i]n any event, ... a formal stipulation between the *parties* ... was memorialized on February 23, 1983" (J.A. 20) (emphasis added). Appellee requested in its petition, among other relief, a civil sanction of contempt pursuant to Rule 37(b)(2)(D) (court may enter order treating as contempt of court any failure to obey court orders) (J.A. 23).

It comes as no surprise that the district court curtly refused to entertain any notion that Helms' refusal to be videotaped violated the court's subpoena (J.A. 102). Appellee could have compelled Helms to submit to a videotaped deposition only by complying with Rule 30(b)(4), but it clearly failed to do so. Irrespective of the possible binding effect on *non-parties* of a stipulation between the *parties,* an issue we need not resolve, it is clear that here appellee, by its own admission (J.A. 20), *never* reduced that stipulation to writing until February 23, 1983, a day *after* the date set for the deposition in question. Thus, when Helms appeared in response to the subpoena, appellee's position was *not* justified by any "informal" agreement between the parties, for Rule 30(b)(4) clearly requires a "writing."

Aside from the lack of a proper stipulation in writing, appellee could not reasonably have read *Colonial Times,* a decision rendered *prior* to the 1980 amendments to the rule, to authorize a right to videotape a deposition without an express order of the court to that effect. *Colonial Times* involved a request under Rule 30(b)(4) for an aurally-recorded deposition. The district court denied the motion because the defendant objected and the movant "ha[d] not demonstrated that a manifest injustice would [have] occur[red] due to the expense of stenographic methods of deposition." 509 F.2d at 520. This court reversed, noting that *once a party moves the court pursuant to Rule 30(b)(4),* the court cannot deny the request unless "the particulars of the request do not reasonably ensure accuracy equivalent to stenographic depositions." *Id.* at 522. *Colonial Times* clearly requires "a party seeking depositions of this sort [*i.e.,* non-stenographic] to obtain a court order authorizing the deposition." *Id.* at 519. *See also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2115 (1970). *Colonial Times* cannot be read to authorize non-stenographically recorded depositions as of right, as appellee maintains, but rather addresses itself to the range of judicial discretion under Rule 30(b)(4), as then worded, *once a request has been made. Id.* at 522. *See also Perry v. Mohawk Rubber Co.,* 63 F.R.D. 603, 604 (D.S.C.1974) ("Rule 30(b)(4) does not authorize the use of videotape or any other non-stenographic recording technique by any party as of right."), *aff'd,* 529 F.2d 516 (4th Cir.1976).

Appellee's position is also flatly refuted by the advisory committee notes to the 1980 amendments to the rule:

It has been proposed that electronic recording of depositions be authorized as a matter of course, subject to the right of a party to seek an order that a deposition be recorded by stenographic means. The Committee is not satisfied that a case has been made for a reversal of present practice.

On appeal appellee seeks to justify its petition additionally on several factors it claims militates strongly in favor of videotaping Helms' deposition. Brief of Appellee at 6–7. These include the fact that (1) Helms provided General Westmoreland a supporting affidavit, and (2) Helms is 71 years old, resides beyond the subpoena power of the trial court, and had refused to promise to appear voluntarily at trial. While we do not comment on whether these factors could be relevant to the decision whether to grant a Rule 30(b)(4) videotaping order, it is clear that they are absolutely irrelevant to the present inquiry whether Helms violated an order of the court. Appellee's reliance on them, therefore, is utterly misplaced.

Unlike the pre-1983 amendment Rule 11, which required a showing of subjective bad faith,[9] Rule 11 now incorporates, through its language "formed after reasonable inquiry," an objective test. *See* Fed.R.Civ.P. 11 advisory committee note ("standard is one of reasonableness under the circumstances"); *Wells v. Oppenheimer & Co.,* 101 F.R.D. 358 (S.D.N.Y.1984); *Zaldivar v. City of Los Angeles,* 590 F.Supp. 852, 856 (C.D.Cal.1984). While we must not sit as Monday morning quarterbacks in reviewing this case, we are compelled to conclude that under the standard of Rule 11, when appellee petitioned the court under Rule 37(b) for an order to show cause why Helms should not be held in contempt, it had absolutely no reasonable basis in law or in fact for doing so. In the words of Rule 11, there is no reasonable basis for concluding that appellee's position was "well grounded in fact and ... warranted by existing law or a good faith argument for the extension ... [or] modification ... of existing law."

As we have noted, the district court rejected out of hand appellee's attempted show cause petition. 584 F.Supp. at 1211; (J.A. 102) (comments from bench). In treating appellee's petition as a Rule 30(b)(4) motion for an order allowing non-stenographic recording, the district court efficiently disposed of the matter and denied Helms' motion for costs and fees on the ground that

> both parties were aware in advance of the others' intransigence in the matter, yet went ahead to confrontation without first applying to the Court, and the attorneys' fees and costs would have been incurred had either proceeded by way of a prior application—CBS for a Rule 30(b)(4) order ..., Helms for a Rule 26(c) protective order....

584 F.Supp. at 1211 n. 6.

The district court's reasoning for denying fees is, however, internally inconsistent. While the court denied Helms' fee request because he failed to request a Rule 26(c) protective order, the court in the same discussion stated that "[t]he history of Fed. R.Civ.P. 30(b)(4) indicates that the initial burden is upon CBS to apply for an order in advance to record the deposition 'by other than stenographic means,' and not upon Helms to seek a protective order under Rule 30(d) against it." *Id.* n. 7. Thus, even had Helms' counsel actually known beforehand of appellee's intention to videotape the deposition, such knowledge would have been irrelevant. The burden was upon appellee to obtain a court order, and Helms had absolutely no obligation to seek a protective order unless a motion for an order to videotape was filed.

■ Moreover, upon Helms' motion for reconsideration of the court's denial of an award of costs and attorneys' fees, the district court stated that "proceedings in connection with the proposed videotaping of his deposition were inevitable and substantially justified." *Westmoreland v. CBS, Inc.,* Nos. 82–0298, 83–0313, 84–0067 (D.D.C. May 15, 1984) (Order) (J.A. 13). Appellee thus urges us that the district court's findings establish that whatever procedural device appellee invoked to secure authorization to videotape appellant's deposition, attorneys' fees would have been incurred, and that litigation of the matter was substantially justified. The problem

---

**9.** *See* note 8 *supra; Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980) (cases cited).

with this conclusion is that though some consideration of Rule 30(b)(4) might have been "inevitable and substantially justified" under Rule 37(a)(4), the question here is whether appellee's contempt petition can be said to have had a reasonable basis in fact or law. Given our previous discussion, we conclude it did not; neither the law nor the facts, as appellee admits them, could have supported appellee's petition. Furthermore, proceeding under Rule 37 is not the same as proceeding under Rule 30(b)(4). We therefore find that the district court's denial of costs and attorneys' fees in connection with appellee's petition was not properly grounded on the relevant factors, and that their denial by the court under Rule 11 constituted error. There was nothing inevitable about appellant defending himself against a contempt petition, and it was not foreordained that appellee would seek a videotaped deposition, either with or without a court order.

 Helms also appeals the district court's denial of an award of costs and attorneys' fees incurred in connection with attending the February 22, 1984 deposition. Federal Rule of Civil Procedure 30(g) provides for an award of attorneys' fees and expenses to the *party* attending a deposition where the party giving notice fails to attend and proceed. *See Cronin v. Midwestern Oklahoma Development Authority*, 619 F.2d 856, 864 (10th Cir.1980). Helms, however, was not a party to the *Westmoreland* suit; the awards under the Rules are matters of legislative grace, and we cannot extend to non-parties that relief expressly provided only to parties. Though this may reflect nothing more than an oversight in the Federal Rules, we must await a change from the drafters. Even if we were to extend the policy behind Rule 30(g) to non-parties, however, because the rule is permissive, we could not say the district court's denial was an abuse of discretion. Helms cites to us no other authority for awarding costs and attorneys' fees in connection with attendance at the deposition, a deposition that we cannot say was subpoenaed in bad faith or without justification and thus not giving rise to a fee award under *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Thus, we cannot say the district court abused its discretion in denying costs and attorneys' fees in this respect.

 Because appellee's filing of a petition seeking to hold Helms in contempt of court clearly violated Rule 11, we reverse the decision of the district court. The question of remedy remains. Under Rule 11, the selection of an appropriate sanction is ordinarily left in the first instance to the discretion of the district court, and it will not be disturbed on appeal absent a showing of an abuse of discretion. However, given that the underlying *Westmoreland* lawsuit has been settled, we find nothing to be gained by further prolonging the present litigation. We find that appellant's request of an award of reasonable attorneys' fees, costs, and expenses directly attributable to the defense of appellee's petition for contempt to be an appropriate sanction. In addition, the district court may on remand impose any further sanctions it considers proper. The district court's award should not, however, include any assessment against appellee for costs, fees, or expenses incurred by Helms in contesting the propriety of videotape recordation. While we have been briefed sufficiently on appeal to satisfy due process concerns regarding the imposition of sanctions, *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), we cannot on this record conclude whether this sanction should be imposed against appellee, its counsel, or both. "Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Fed.R.Civ.P. 11 advisory committee note. Appellee might have requested counsel to obtain a videotaped deposition so it could later be used on television. This circuit has previously stated that the district court is in the best position to judge the relative responsibility of counsel and client, and to apportion the sanction accord-

ingly. *See Weisberg v. Webster*, 749 F.2d 864 (D.C.Cir.1984) (Rule 37 context). We have also required that the district court's conclusions be adequately explained by specific findings. *Id.* at 873–74. Accordingly, the case is remanded to the district court for imposition of a sanction of at least reasonable attorneys' fees, costs, and expenses against appellee and/or its counsel, supported by specific findings. We urge the court on remand to be mindful that the costs of sanction litigation can exceed the efficiencies sought by the Federal Rules, and thus to limit the scope of its proceedings accordingly.

Helms also requests attorneys' fees and costs for the prosecution of this appeal. We have found no Rule 11 case to support this proposition; Helms does refer to *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984). There the court awarded fees and costs for the appellate defense of a district court's award of Rule 37(b) sanctions under the rationale that the errant party's appeal caused the awardee to incur additional expenses in order to defend the district court's imposition of sanctions. Thus, the court concluded, in the words of Rule 37(b) the appellate expenses were "caused by the failure" of the disobedient party to comply with a court order. The court also relied on an important policy consideration: requiring a party to bear these expenses could greatly offset the amount of the sanction and thus create a disincentive for seeking sanctions.

■ Rule 11 provides for an award of expenses "incurred because of the filing of the pleading, motion, or other paper." The present case represents the flip side of *Tamari*. Here sanctions were *denied* in the district court; only through appeal did Helms obtain his award. We think it would be anomalous indeed to deny Helms his expenses incurred in prosecuting this successful appeal where he clearly *prevailed* on the substantive issue of the propriety of appellee's right to seek contempt sanctions. We accordingly think it reasonable to conclude that Helms' appellate expenses were "incurred because of" the filing of the petition. Further, the policy concerns present in *Tamari* apply equally

here: It is very possible that appellate expenses might exceed substantially the sanction in the district court, thus forcing many litigants in appellant's position to conclude that the vindication of the Rule 11 interest is not worth the candle. *See also Mickwee v. HSU*, 753 F.2d 770 (9th Cir.1985). Unquestionably, this would undermine the purposes behind Rule 11. Rule 11 is specifically designed to deter groundless litigation tactics and stem needless litigation costs to courts and counsel. Given this, we find it hard to believe that the drafters of the rule intended appellants such as Helms to bear their own appellate costs necessary to correct the error of appellees' ways. Moreover, in other areas of the law appellate fees are awarded where an appeal is necessary to correct a district court's erroneous denial of fees. *See, e.g., Matter of Pine*, 705 F.2d 936 (7th Cir.1983) (appellate fees awarded for appeal from denial of fees in bankruptcy court); *see also Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir.1980) (prevailing plaintiffs entitled to fee awards for time spent litigating their claim to fees under 42 U.S.C. § 1988) ("[D]enying attorneys' fees for time spent in obtaining them would 'dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.'" (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)); *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir.1979) (same), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Environmental Defense Fund v. EPA*, 672 F.2d 42, 62 (D.C.Cir.1982) (where attorneys' fee question has "become one of the issues of the case," Toxic Substances Control Act, 15 U.S.C. § 2618(d), compensates fees incurred in efforts to obtain fee request). The calculation of the amount of the appellate attorneys' fee award can best be made by the district court. *Perkins v. Standard Oil Co.*, 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970) (per curiam) (award of appellate fees should, as a general rule, be fixed in first instance by district court); *Panior v. Iberville Parish School Board*, 543 F.2d 1117, 1120 (5th Cir.1976)

(per curiam) (same). Thus, in assessing attorneys' fees the district court should also include a reasonable attorneys' fee for the prosecution of the present appeal, which was necessary to perfect the Rule 11 interest here and for which we interpret Rule 11 to authorize reimbursement.

Rule 11 serves a dual purpose: punishment and deterrence. *See* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985). When groundless pleadings are permitted, the integrity of the judicial process is impaired. Additionally, as borne out by this case, litigation abuse embroils the judiciary in needless satellite litigation. The monetary award here may be small, but even such a humble investment in guaranteeing the proper functioning of our judicial process will reap great dividends. We think Judge Schwarzer appropriately described the need for Rule 11 enforcement:

> Of all the duties of the judge, imposing sanctions on lawyers is perhaps the most unpleasant. A desire to avoid doing so is understandable. But if judges turn from Rule 11 and let it fall into disuse, the message to those inclined to abuse or misuse the litigation process will be clear. Misconduct, once tolerated, will breed more misconduct and those who might seek relief against abuse will instead resort to it in self-defense.

Schwarzer, *supra,* 104 F.R.D. at 205.

This case illustrates the need for imposing judicial sanctions against groundless litigation tactics. Mindful of counsel's duty to represent the client's interest with zeal and vigor, we encourage the creative persuasion that fosters growth in the law. However, such creativity has its bounds: proceedings must be "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. And while "[a] party [or counsel] is not to be penalized for maintaining an aggressive litigation posture," *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 180–81 (D.C.Cir.1980), "[a]ttorneys do not serve the interests of their clients, of the profession, or of society

when they assert claims or defenses grounded on nothing but tactical or strategic expediency," *Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern California,* 582 F.Supp. 1519, 1522 (N.D.Cal.1984). In seeking to have Helms found in contempt of court here, the petition was ill-founded and clearly violated Rule 11.

The judgment regarding the petition is reversed and the case is remanded to the district court for an assessment of costs, expenses, and reasonable attorneys' fees incurred in the district court and on this appeal in defending against appellee's petition for contempt, in addition to any other sanction the district court may find appropriate, against appellee, its counsel, or both, supported by specific findings. No award is to be made for costs, expenses, or attorneys' fees incurred in litigating the question whether appellee could in fact record the deposition by other than stenographic means. The district court's decision to deny relief relating to Helms' attendance at the subpoenaed deposition is affirmed. Additionally, costs for this appeal are awarded to appellant.

*Judgment accordingly.*